**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **STATE FARM FIRE & CASUALTY** | ) |
| **COMPANY** *as subrogee of* **KELLY SLABACH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CAUSE NO. 3:08-CV-436** |
| | ) |
| **ELECTROLUX HOME PRODUCTS, INC.,** *a* | ) |
| *foreign corporation*, | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Defendant Electrolux Home Products, Inc. manufactured a clothes dryer that caught on fire causing considerable damage to the home of  Kelly Slabach, subrogee in this action, and her husband.  State Farm Fire & Casualty insured the Slabach's home, paid their insurance claim and then filed this suit against Electrolux to recover the amount paid on the Slabach's behalf.  State Farm asserts claims of strict product liability, negligence, and breach of warranty, all of which are dependent on its theory that the design and warnings for the dryer were defective thereby creating an unreasonably dangerous product.[1]

State Farm designated its expert Ronald L. Parsons ("Parsons") in support of its theory. Electrolux then moved to preclude Parson's testimony [DE 90] under Fed.R.Evid. 702 and the court's gatekeeping function identified in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), and its progeny. Subsequently, the undersigned referred the motion to Magistrate Judge

---

[1]The parties advise that this case is one of hundreds of similar lawsuits filed throughout the country involving Electrolux dryer fires.

Roger B. Cosbey pursuant to 28 U.S.C. §636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and

N.D.Ind. Local Rule 72-1(b), for a Report and Recommendation. [DE 117].  On November 5, 2012,

the Magistrate Judge entered his Report and Recommendation ("R & R") [DE 120] recommending

that Electrolux's motion to exclude Parsons be denied.  Thereafter, Electrolux filed its Objections

to the Magistrate Judge's R & R [DE 122] seeking to have this Court reject the R & R and/or

consider further evidence before ruling on the objections.  For the reasons set forth herein, the Court

will OVERRULE Electrolux's objections to the R& R;  ADOPT the R & R in its entirety [DE 120];

and DENY Electrolux's Motion to Exclude the Testimony of Ronald L. Parsons.[2]

## STANDARD OF REVIEW

From the outset, the parties disagree on the appropriate standard of review for this Court's

review of the Magistrate Judge's R & R.  State Farm cites cases which indicate that motions relating

to evidentiary matters are non-dispositive and, under Fed.R.Civ.P. 72(a) and 28 U.S.C. 636(b)(1)(A)

the standard of review is "clearly erroneous."  See *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,*

2000 WL 420548, *2, n. 1 (S.D.N.Y. April 18, 2000) ("A decision to admit or exclude expert

testimony is considered 'nondispositive' of the litigation."); *Cusumano v. Mapco Gas Products, Inc.,*

1994 WL 86653, * 1 (N.D.Ill. March 10, 1994). Electrolux, however, argues that as a general rule,

when objections are received to a Magistrate Judge's Report and Recommendation pursuant to 28

---

[2]On February 1, 2013, State Farm filed a Notice to the Court of Additional Supplemental
Authority [DE 127].  Electrolux has also filed a Motion to Strike State Farm's supplemental authority
arguing that the expert named in the supplemental authority is not Mr. Parsons, but rather a colleague of
his. [DE 128].  Electrolux's argument, while noted, is not justification for the Court to strike the filing.
Instead, the argument goes to the weight that should be afforded the supplemental authority by the Court
and, for this reason, the Motion to Strike [DE 128]  is DENIED.

U.S.C. §636(b)(1)(B),[3] the assigned District Judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed.R.Civ.P. 72(b).   Under this more stringent standard, the District Judge "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

In this case, while the Court agrees with State Farm that the "clearly erroneous" standard is likely the more appropriate one in light of the non-dispositive nature of the motion in limine, both parties have submitted supplemental notices since the Magistrate Judge issued his R & R as well as briefing on those notices and thus, the Court shall conduct a *de novo* review of both the Magistrate Judge's R & R and the additional submissions from the parties.  As is evidenced by this Court's ultimate conclusion, under either standard the Magistrate Judge's R & R survives scrutiny.

## <u>DISCUSSION</u>

On August 16, 2006, the Slabach's dryer caught fire, causing damage to their home and personal property for which State Farm paid $234,825.21.[4]  The Slabach's dryer was a gas fired dryer manufactured by Electrolux.  State Farm, as indicated above, brought this subrogation action

---

[3]The undersigned's Order referring the matter to the Magistrate Judge for an R & R (DE 117) specifically indicates that the matter is referred pursuant to 28 U.S.C. §636(b)(1)(B), Fed.R.Civ.P. 72(b) and N.D.Ind. L.R. 72-1(b) and the Magistrate Judge's R & R recites the same provisions.  Those provisions are typically reserved for referrals of dispositive motions.  As a result, the referral order may have contributed to the underlying dispute as to the standard of review.  However,  in light of the court's determination that it will apply the more rigorous *de novo* review, it is a non-issue in the case.

[4]The Court recites the facts only to the extent necessary to rule on the  objections to the Magistrate Judge's R & R. A more comprehensive recitation of the facts can be found in the Magistrate Judge's R & R, (DE 120).

against Electrolux alleging that the dryer was defectively and dangerously designed, manufactured, assembled, and sold and failed to give adequate warnings regarding the potential for the dryer to malfunction and ignite a fire. (Complaint, ¶8).

State Farm designated Ronald Parsons as its liability expert to opine generally that: (1) the dryer caught fire because the design was defective; (2) that Electrolux failed to redesign the dryer to eliminate the fire hazard; and (3) that Electrolux failed to warn users of purportedly known fire hazards. (Parson's Report 102-04). Parson's conclusions are based upon his observations that the Slabach fire originated within their Electrolux dryer; that the first fuel ignited was lint that had accumulated at the gas burner and rear diffuser assembly; that this burning lint ignited secondary fuels in the dryer, including the dryer's plastic components; and the lint accumulated in the air path downstream of the drum and the clothing load. (Parson's Report, 101-02). Specifically with respect to the dryer's design, Parson's concludes that "the lint that is produced in the Electrolux design collects in areas that are not visible to, or serviceable by, the average user and that the design is defective because it is constructed using some combustible, plastic components instead of steel ones." (Parsons Report, 103-04). Parson further concludes that "the warnings on the dryer do not advise the user that lint collects near the heat source and can be a fire hazard," which he ultimately concludes creates an unreasonably dangerous product. (Parsons Report, 104).

The Magistrate Judge's R & R sets forth in detail the qualifications of Parsons, including his employment with Wright Group, Inc., where he has 29 years of experience conducting origin and cause analysis on fires, including dryer fires; on-site investigation of fires and explosions; investigating products for mechanical and electrical failures; and designing analysis of products as it relates to failure modes. (DE 120, R & R, p. 3). It also sets forth his formal education and notes

that while he has classroom education through the National Association of Fire Investigators ("NAFI") and the International Association of Arson Investigators ("IAAI"), he has no collegiate background in fire investigation, engineering, physics, chemistry, psychology, "human factors,"[5] safety engineering or product design. (Parsons Dep. 11). That said, the R & R does note that Parsons has safety engineering training and design and testing analysis training from valid sources and he is certified by the NAFI as both a Fire and Explosion Investigator and Instructor.

Upon reviewing Parsons's report, his deposition testimony, and the applicable law, the Magistrate Judge concluded that Parsons had sufficient qualifications to permit him to opine as to the defective design of and warnings associated with the Slabach's dryer. The Magistrate Judge further concluded that Parson's opinions were reliable in that they were premised upon sufficient facts, i.e., his examination of exemplar dryers, and a reliable scientific methodology, i.e. the universally accepted methodology NFPA 921. The Magistrate Judge concluded that Parsons "extensively tested his lint ignition theory in a number of different categories of testing," (R & R, p. 19) and that his methodology had been peer reviewed and widely accepted by National Fire Protection Association ("NFPA") and the Consumer Product Safety Commission ("CPSC"). Finally, the Magistrate Judge noted that "Parson's theories of lint ignition and product defect have been previously posited by him and other experts in other federal courts and have been accepted by those courts as meeting the *Daubert* standard, (R & R, p. 24 citing *State Farm Fire & Cas. Co.*, v. *Electrolux*, No. 1:10-CV-3901 (E.D.N.Y. Aug. 22, 2012); *Phila Contributionship Ins. Co.*, v. *Electrolux*, No. 2:10-CV-2045, Docket #69; *Rager v. General Electric Products*, 2010 WL 5393857,

---

[5]"Human Factors is a discipline that incorporates a study of human behaviors, limitations and capabilities into the design of products, systems, and equipment." (R & R, p. 12 fn. 4 quoting *Winters v. Fru-Con, Inc.,* 498 F.3d 734, 741 (7th Cir. 2007).

at *8-9; *Travelers Prop. & Cas. Corp. V. Gen. Elec. Co.,* 150 F.Supp. 2d 360, 364-67 (D.Conn. 2001).

Parsons also opines on the adequacy of the warnings and states that "the warnings on the [Slabachs'] dryer do not advise the user that lint collects near the heat source and can be a fire hazard." (Parsons Report, 104; R & R, p. 26). He further indicates that an appropriate warning would "advise the user that lint collects near the heat source and can be a fire hazard." In concluding that Parsons was permitted to testify on these issues, the Magistrate Judge noted that Parsons has examined the labels affixed to Electrolux dryers, including the Slabachs' dryer and has researched and analyzed the user's guides and service manuals associated with them. He has personal knowledge of the content of the labels, guides and service manuals and he is qualified to provide his limited opinion as to what the warnings do contain and what they omit. Moreover, the Magistrate Judge concluded that Parsons statements about the warnings are not necessarily matters requiring expertise but rather, personal factual observations of what hazards the warnings addressed. This said, the Magistrate Judge did specifically limit Parsons to the above opinions noting that he is not qualified to discuss the wording, style, color, or font of an appropriate warning. (R & R, p. 26)

Despite the Magistrate Judge's painstaking thirty page analysis of the record presented with respect to Parson's qualifications and the reliability of his testimony, Electrolux filed objections to the R & R asserting that the Magistrate Judge erred in his recommendations that: (1) Parsons is qualified to render opinions on defective and alternative design theories; (2) Parsons methodologies on defective and alternative design withstand *Daubert* scrutiny; (3) Parsons is qualified to opine as to the adequacy of the warnings for the dryer; and (4) an evidentiary hearing on the *Daubert* motion was not necessary based upon the completeness of the record before him.

6

The Court begins with the last of the objections because it is the most easily dispensed with of the four objections.  The Magistrate Judge concluded that a *Daubert* hearing was unnecessary given the full record before him.   At the time the Magistrate issued his R & R, he had before him the deposition transcript of Parsons, Parsons' expert report, complete and extensive briefing from the parties, and opinions from similar cases involving Parsons's testimony (or that of his similarly qualified colleagues) on nearly identical opinions as offered in this case. In explaining his rationale for denying a hearing, the Magistrate Judge noted that the parties "do not indicate why such a hearing is necessary or what missing information a hearing would supply..."  R & R. at 9, fn. 3

In its written objections, Electrolux still does not indicate why  the record before the court was insufficient,  what evidence would have been presented at a hearing to offer a more complete record, or what, if anything, a hearing would have added to the record  that was before the Magistrate Judge.  More importantly, this Court's independent review of the record indicates that the record was more than adequate for a determination of the issues presented in Electrolux's *Daubert* motion without a hearing and that record is more than adequate for this Court to conduct a *de novo* review without a further hearing.  *See, e.g., Kirsten v. Parks Corporation*, 159 F.3d 1065, 1067 (7th Cir. 1998) (finding that the district court had sufficient basis for its decision to exclude the opinion of a proffered expert without holding a hearing); *Phillips v. Raymond Corp.*, 364 F. Supp. 2d 730, 739 n.5 (N.D. 111. 2005) ("It is axiomatic that while Daubert hearings may, in some instances, be recommended, they are not required ...").    For that reason, this objection to the Magistrate Judge's R & R is DENIED.

As for the substantive objections to the Magistrate Judge's R & R, this Court's review, as was the Magistrate Judge's,  is guided through the lens of *Daubert*.  The Magistrate Judge

articulated a thorough and complete framework of the Court's gatekeeping function, see R & R, pp. 6-8) and thus, at this stage, it suffices to say that this framework requires the district court to assess the reliability and relevance of Parsons's proposed testimony to determine whether (1) the proposed witness would testify to valid scientific, technical, or other specialized knowledge and (2) his testimony will assist the trier of fact. *Ammons v. Aramark Unif. Servs., Inc*., 368 F.3d 809, 816 (7th Cir.2004) ; *see also* Fed.R.Evid. 702.

Electrolux first makes a half-hearted objection to the Magistrate's determination that Parsons is qualified to render the opinions he offers as to design defect and alternative theories of the design. An expert may be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702; *Smith v. Ford Motor Co.,* 215 F.3d 713, 719 (7th Cir.2000) ("a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area."). Here, the Magistrate Judge devoted substantial discussion to Parsons qualifications in each of these areas noting, in particular, that he has extensive product design and defect analysis experience related to clothes dryers. (R & R, pp. 10-16). Parsons "has examined hundreds of dryers from all major manufacturers, spent thousands of hours conducting experimental testing on dryer operation and failure modes, and currently spends a third of his time on dryer fires." (R & R, p. 10, citing to Parsons expert report). In addition, the Magistrate Judge put considerable weight on Parsons qualifications specifically relating to Electrolux dryers noting that he has "dismantled, thoroughly examined, and documented hundreds of Electrolux dryers, both electric and gas models, which are of a similar design to that of the Slabach's dryer (the "ball hitch" design), and, in doing so, has become very familiar with their component parts." (R & R, p. 11). Ultimately, the Magistrate Judge

8

concluded:

> Because of his extensive experience dismantling and analyzing different dryer
> designs, including the Slabachs' dryer; his background investigating fires and
> product failures for 33 years and counting; and his formal and informal training,
> Parsons is qualified to opine about the design of the Slabach dryer, the relevant
> differences between that design and other dryer designs and between that design and
> the "new" Electrolux dryer design, and the purported defects he sees in the
> Electrolux design that led to the Slabachs' dryer fire.

(R & R, p.11).

Electrolux now, as it did before the Magistrate Judge, argues that Parsons's lack of formal

education and training necessarily lead to his general disqualification as an expert.  Electrolux,

despite believing it is entitled to a *de novo* review and, as noted above, seeking an evidentiary

hearing on its motion, offers nothing additional in its objections to the R & R that was not previously

before the Magistrate Judge, with one exception.  On May 17, 2013, Electrolux submitted a Notice

of Supplemental Authority (DE 132) citing to the case of *New Jersey Manufacturers, Ins. Group*

*a/s/o Kecia Ellis and Kathleen Brand v. Electrolux* (No. 3:10-CV-01597) ("Ellis") which it believes

supports its contention that Parsons lack of formal engineering qualifications disqualify him as a

witness.  In that case, Parsons offered identical testimony as to the defective design of the dryer as

he proposes to offer in this case.  After admitting his expert testimony at trial, the judge commented:

> I would say that Mr. Parsons' qualifications, obviously as an engineer, are lacking.
> It may be that if this had been flagged for me earlier, I would have ruled that he
> could not testify with regard to design defect.

Electrolux Notice, at 1 (DE 132).

In response to this Notice, State Farm argues that there are hundreds of cases involving

Electrolux dryer fires throughout the country and the commentary in the above case is at odds with

every other court that has considered the qualifications of Parsons or his colleagues. As the Magistrate Judge noted, Parsons's expert report was cosigned by Michael R. Stoddard, Jr., a colleague of Parsons at the Wright Group.  Stoddard has been deemed qualified to testify as to the same opinions that Parsons offers in this case in *State Farm Fire & Casualty v. Electrolux Home Products, Inc.,* No. 1:10-CV-3901 (E.D.N.Y. Aug. 22, 2012).  He was deemed qualified to offer the opinions despite the fact that, like Parsons, Stoddard lacked an engineering background or any training, education, or experience in product design.   Most recently, the District Court in *The Automobile Insurance Co. a/s/o Leandro Gargiulo v. Electrolux Home Products, Inc.,* No. 10-CV-0011, 2012 WL 6629238 (Dec. 20, 2012) ("Gargiulo"), concluded that another colleague of Parsons, David E. Beauregard could present expert testimony nearly identical to that offered in this case and that Beauregard's "qualifications, as were those of the expert in *Kumho [v. Carmichael,* 526 U.S. 137 (1999)], are presumably based at least in large part on his experience." (*Id.* at *3).[6] The district judge went on to conclude that Beauregard was qualified to render opinions on defective design and alternative design theories.

In addition, Parsons has been specifically deemed qualified in *Phila Contributionship Ins. Co., v. Electrolux,* No. 2:10-CV-2045, Docket #69 (E.D. Pa. Oct. 3, 2011) and *Rager v. General Electric Products*, 2010 WL 5393857, at *8-9 (M.D. Pa. Dec. 22, 2010).  In *Rager,* the court relied heavily upon Parsons's more than 30 years of professional experience, his practical experience of being involved iin more than 3,000 fire investigations, his professional certifications, and his extensive examinations and testing of dryers.

---

[6]Although the district judge noted that Beauregard's qualifications were "based upon experience" it is worth noting that the court did not engage in an in-depth analysis of Beauregard's qualifications because Electrolux conceded his qualifications as to product design and defect. (Gargiulo, at *1).

Although the supplemental authority in the *Ellis* case indicates that the district judge in that case was skeptical as to whether Parsons lack of formal engineering qualifications could have disqualified him, the issue of Parson's education was ultimately never resolved in Electrolux's favor. Parsons *was* deemed qualified and permitted to provide expert testimony to the jury and, as Electrolux notes, the jury in that case returned a verdict favorable to Electrolux. Thus, the court concludes that little to no weight can be afforded this supplemental authority offered by Electrolux.

In sum, having reviewed Parsons qualifications laid out in his report in its entirety, separate and apart from the analysis offered in the Magistrate Judge's R & R (which the undersigned concludes is an accurate and thoughtful assessment of Parsons's qualifications); his deposition testimony; the opinions of all the other courts (including the two additional notices of supplemental authority filed since the Magistrate Judge's R & R) that have examined Parsons's qualifications and those of his colleagues with similar experience and qualifications; and the case authorities discussing expert qualification, the Court concludes that there is little doubt that Parsons's experience, his professional certifications, and his extensive examinations and testing of dryers qualify him to render expert testimony in this case. The record demonstrates that Parsons most certainly has a level of expertise and special knowledge that will be helpful to the jury in its determination of the issues in the case and his practical experience and training qualify him to render his opinions. Thus, the Court ADOPTS this portion of the Magistrate Judge's R & R in its entirety and OVERRULES Electrolux's objection to this portion of the R & R.

Next, Electrolux challenges the specific opinions offered by Parsons contending first, that the Magistrate Judge's conclusion that Parson's methodologies on the issue of design defect and alternative design are reliable. Second, it asserts that the Magistrate Judge erred in concluding that

11

Parsons testimony relating to the adequacy of the warning labels will assist the jury in this case.

Beginning with Parsons's methodologies, to be deemed reliable, his opinions must "be based on sufficient facts or data." Fed.R. Evid. 702(b). The Magistrate Judge extensively reviewed the data and facts relied upon by Parsons in concluding, as he did, that the Electrolux dryer design is defective and that an alternative design is necessary to avoid the dangers associated with the Electrolux dryer. The Magistrate Judge noted the following with respect to the data and the reliability of Parsons's testimony in his R & R: (1) Parsons dismantled and analyzed at least 141 exemplar Electrolux dryers that were involved in fires; (2) he has dedicated a significant portion of his time over the last ten years to investigating dryer fires including conducting over one thousand hours of testing on his lint ignition theory; (3) he relied upon the methodology outlined in the NFPA 921, Guide for Fire and Explosion Investigations, published by the National Fire Protection Association to reach his conclusions; (4) Courts throughout the country have held the NFPA 921 methodology reliable under Fed.R.Evid. 702 (R & R. P. 17 (citing a laundry list of cases); (5) Parsons followed the NFPA 921 methodology; (6) Parsons engaged in extensive testing of his theory relating to the design defect in the Electrolux dryer; (7) Parsons "adhered to 'the standards of intellectual rigor that are demanded in [his] professional work,'" (R & R, p. 20) when he designed, constructed, and tested an alternative design that could be retrofitted to existing Electrolux dryers and suggested a complete redesign of the dryer; (8) Parsons proposed alternative design employs the same concept used by the majority of today's dryer manufacturers; (9) although Parsons's specific testing has not been subject to peer review, the methodology employed by Parsons has been and two independent agencies, – the Consumer Product Safety Commission ("CPSC") and the NFPA – have reached conclusions consistent with Parsons's namely that there

12

are dangers associated with lint collection inside clothes dryers; and (10) "...Parsons's theories of lint ignition and product defect have been previously posited by him and other experts in other federal courts and have been accepted by those court as meeting the *Daubert* standard." (R & R, p. 24). As is evidenced by the Magistrate Judge's conclusions, he exhaustively reviewed the entirety of the record and the basis for Parsons's opinions.  Moreover, the Magistrate Judge addressed each of Electrolux's arguments and, in most cases, concluded that they were issues for cross-examination since they went to the weight a jury should give the evidence but not to the admissibility of Parsons's testimony.

In its objections, Electrolux argues that because Parsons's opinions are based entirely on a set of 141 exemplar Electrolux dryers that Parsons "dismantled and analyzed" his opinions lack a sufficient factual basis for his conclusions. (Objection, p. 4).  It argues that  his data is skewed and not representative of the larger population of clothes dryers in the United Stated during this period, or of the population of clothes dryers involved in fires.  Electrolux further takes issues with the Magistrate Judge's conclusion that the NFPA 921 methodology is scientifically sound since it is a "cause and origin" theory only. (Objection, p. 5).

The undersigned has reviewed in full the factual basis and data provided in Parsons Report; the other court opinions cited by the parties that have concluded Parsons opinions relating to design defect and alternative design are admissible;  and the insightful analysis utilized by the Magistrate Judge in reaching his conclusions.  From this Court's review, Electrolux has simply regurgitated the same arguments that have been routinely rejected with respect to Parsons's testimony as well as the arguments already rejected by the Magistrate Judge.  It  has offered nothing new to change the analysis that the Magistrate Judge employed.  And, although it knows full well that Parsons has

13

examined  over a thousand dryers and the sampling of 141 set forth as a basis for his opinion are a random sampling of all the dryers he has examined, it misrepresents the record to this Court in its objections.  *See* R & R, p. 11 ("Parsons has dismantled, thoroughhyly examined, and documented hundreds of Electrolux dryers, both electric and gas models, which are of a similar design to that of the Slabachs' dryer...Parsons has also extensively examined dryers manufactured by other companies..."). Moreover, Electrolux persists in its theory, which has been generally unsuccessful in these dryer fire cases throughout the country, (see R & R p. 17)  that the NFPA 921 methodology employed by Parsons relates solely to cause and origin and cannot form the basis for an opinion on defective/alternative design.

Having reviewed the entire record as well as the parties briefing on the objections, the Court finds no error in the Magistrate Judge's analysis relating to the admissibility of Parsons's testimony as to design defect and alternative design.  The Court OVERRULES Electrolux's objection to the R & R relating to the methodology and reliability of Parsons's opinions as to design defects and alternative design.  Indeed, "[w]here as here, a [Magistrate Judge] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate." *Sanchez-Medina v. Unicco Service Co.*, 2010 WL 3955780 (D. Puerto Rico, Sept. 30, 2010) citing *In Re San Juan Dupont Plaza Hotel Fire Litig.,* 989 F.2d 36, 38 (1st Cir.1993).  In this case, the undersigned cannot further  elaborate on the already sound opinion written by the Magistrate Judge on these issues.  The Court ADOPTS in its entirety, the Magistrate Judge's R & R as it relates to Parsons's testimony concerning defective design and alternative design.

Finally, Electrolux objects to the Magistrate Judge's conclusion that Parsons's may render an opinion on Electrolux's warning labels. Electrolux asserts that allowing Parsons to testify that

14

the warnings fail to warn consumers that lint collects near the heat source and could be a potential fire hazard will mislead the jury since Electrolux follows the warnings recommended by the American National Standards Institute (ANSI).  (Objections, p. 7).  It further asserts that Parsons testimony will confuse the jury since whether the warnings were insufficient has little to do with whether the product was defectively designed.

This Court's review of the record reveals that Electrolux's objection to this portion of the R & R is not well-taken.  As the Magistrate Judge explained, Parsons is qualified to opine concerning factual matters within his personal knowledge such as what the labels he observed said or did not say.  "He will simply discuss and analyze the warnings to the extent they fail to warn of the purportedly defective design that allows lint to accumulate near the heat source and how such a warning is one possible solution to the engineering problem." (R & R, p. 13).  Moreover, State Farm's theory that the warnings were inadequate to warn the end user of a potential fire hazard thereby creating an unreasonably dangerous product is a theory independent of the design defect theory and thus, Parsons's opinions are also  relevant to that theory.  *See State Farm Fire & Cas. Co. v. Electrolux*, No. 2:10-CV-01147 RSM, 2011 WL 6753140, at *3 (finding an expert similar to Parsonst qualified to render a warnings opinion "because he seeks to opine that the dryer is defective due to the lack of *any* warning on the product itself.").  As for Electrolux's argument that its warnings complied with the ANSI standards, that is a matter for cross-examination.

Simply put, this Court's review of Parsons's qualifications and the limited testimony he offers relating to the warnings on Electrolux dryers does not fall short of the *Daubert* standard.  Another court has concluded similarly in an identical scenario, see *Phila. Contributionship Ins. Co., v. Electrolux, Inc.*, No. 2:10-cv-2045, Doclet #69 (E.D. Pa. Oct. 3, 2011), and again, the Magistrate

15

Judge gave meaningful consideration to the arguments raised and the issues presented. The undersigned's review yields the same analysis as that in the R & R. Accordingly, Electrolux's objection to Parsons's warnings testimony is OVERRULED and the Magistrate Judge's R & R is ADOPTED in its entirety.

## **CONCLUSION**

Based on the foregoing, Electrolux's Objection to the Magistrate Judge's R & R as to State Farm's Proffered Expert Ronald L. Parsons are OVERRULED. (DE 122). The Magistrate Judge's R & R (DE 120) is ADOPTED in its entirety.[7] Electrolux's Motion in Limine to Preclude the Testimony of Ronald L. Parsons [DE 90] is DENIED. Electrolux's Motion to Strike [DE 128] is DENIED.

Entered: This 17th day of June, 2013

s/ William C. Lee
United States District Court

---

[7]The court notes that in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial. *See Ohler v. United States*. 529 U.S. 753, 758 fn. 3 (2000). Thus, the issue of the admissibility of Parsons's testimony may be revisited at trial or in a final pretrial conference if the presiding judge is so inclined.