UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| STATE FARM FIRE & CASUALTY COMPANY *as subrogee of* KELLY SLABACH, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO. 3:08-CV-436 ) |
| ELECTROLUX HOME PRODUCTS, INC., *a foreign corporation*, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Defendant Electrolux Home Products, Inc. manufactured a clothes dryer that caught on fire causing considerable damage to the home of Kelly Slabach, subrogee in this action, and her husband. State Farm Fire & Casualty insured the Slabach's home, paid their insurance claim and then sued Electrolux to recover the amount paid on the Slabach's behalf. State Farm asserts claims of strict product liability, negligence, and breach of warranty, all of which are dependent on its theory that the design and warnings for the dryer were defective thereby creating an unreasonably dangerous product.[1]

Electrolux designated its expert Dr. Christine Wood ("Wood") to counter State Farm's allegations. State Farm then moved to preclude Wood's testimony [DE 92] under Fed.R.Evid. 702 and the court's gatekeeping function identified in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), and its progeny. Subsequently, the undersigned referred the motion to Magistrate Judge

---

[1] The parties advise that this case is one of hundreds of similar lawsuits filed throughout the country involving Electrolux dryer fires.

1

Roger B. Cosbey pursuant to 28 U.S.C. §636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and N.D.Ind. Local Rule 72-1(b), for a Report and Recommendation. [DE 117]. On November 5, 2012, the Magistrate Judge entered his Report and Recommendation ("R & R") [DE 121] recommending that State Farm's motion to exclude Wood's testimony be denied in part and granted in part. Thereafter, both Electrolux and State Farm filed their Objections to the Magistrate Judge's R & R [DE 123, DE 124] seeking to have this Court reject certain portions the R & R and, in the case of Electrolux, consider further evidence before ruling on the objections. For the reasons set forth herein, the Court will OVERRULE Electrolux's objections to the R& R; OVERRULE State Farm's objections to the R&R; ADOPT the R & R in its entirety [DE 121]; and DENY, in part, and GRANT, in part, State Farm's Motion to Exclude the Testimony of Dr. Christine Wood. [DE 92].

## STANDARD OF REVIEW

From the outset, the parties disagree on the appropriate standard of review for this Court's review of the Magistrate Judge's R & R. State Farm cites cases which indicate that motions relating to evidentiary matters are non-dispositive and, under Fed.R.Civ.P. 72(a) and 28 U.S.C. 636(b)(1)(A) the standard of review is "clearly erroneous." See *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,* 2000 WL 420548, *2, n. 1 (S.D.N.Y. April 18, 2000) ("A decision to admit or exclude expert testimony is considered 'nondispositive' of the litigation."); *Cusumano v. Mapco Gas Products, Inc.,* 1994 WL 86653, * 1 (N.D.Ill. March 10, 1994). Electrolux, however, argues that as a general rule, when objections are received to a Magistrate Judge's Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B),[2] the assigned District Judge "shall make a de novo determination of those

---

[2]The undersigned's Order referring the matter to the Magistrate Judge for an R & R (DE 117) specifically indicates that the matter is referred pursuant to 28 U.S.C. §636(b)(1)(B), Fed.R.Civ.P. 72(b) and N.D.Ind. L.R. 72-1(b) and the Magistrate Judge's R & R recites the same provisions. Those

portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed.R.Civ.P. 72(b). Under this more stringent standard, the District Judge "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* However, the court need not conduct a hearing on the entire matter, but must give "fresh consideration to those issues to which specific objections have been made." 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, § 3076.8, at p. 56 (1992 Pocket Part); See also *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir.1995).

In this case, while the Court agrees with State Farm that the "clearly erroneous" standard is likely the more appropriate one in light of the non-dispositive nature of the motion in limine, the Court shall conduct a *de novo* review of both the Magistrate Judge's R & R. As is evidenced by this Court's ultimate conclusion, under either standard the Magistrate Judge's R & R survives scrutiny.

## DISCUSSION

On August 16, 2006, the Slabach's dryer caught fire, causing damage to their home and personal property for which State Farm paid $234,825.21.[3] The Slabach's dryer was a gas fired dryer manufactured by Electrolux. State Farm, as indicated above, brought this subrogation action against Electrolux alleging that the dryer was defectively and dangerously designed, manufactured,

---

provisions are typically reserved for referrals of dispositive motions. As a result, the referral order may have contributed to the underlying dispute as to the standard of review. However, in light of the court's determination that it will apply the more rigorous *de novo* review, it is a non-issue in the case.

[3]The Court recites the facts only to the extent necessary to rule on the objections to the Magistrate Judge's R & R. A more comprehensive recitation of the facts can be found in the Magistrate Judge's R & R, (DE 121).

3

assembled, and sold and failed to have adequate warnings regarding the potential for the dryer to malfunction and ignite a fire. (Complaint, ¶8).

Electrolux designated Drs. Christine Wood and Duane L. Steffey[4] of Exponent, Inc., to serve as its experts and counter State Farm's theory of liability. The two Drs. co-authored a written report entitled, "Evaluation of Fire Risks Associated with Clothes Dryers: Electrolux Dryers and All Dryers."[5] In that report, the Drs. opine that: (1) "[t]he risk of dryer-involved fire reported for Electrolux clothes dryers is statistically significantly lower than the risk of fires for all models of clothes dryers from any manufacturer;" and (2) "[r]elative to the fire rates for all clothes dryers, Electrolux clothes dryers are not an unreasonably dangerous product." (Dr. Wood Report, p. 8).[6] Dr. Wood also issued a second written report, hereinafter "Dr. Wood Warnings Report," wherein she analyzes the warnings and safety information that Electrolux provided in its owner's guide, operating instructions, and product labels associated with its dryers. From her analysis, she concludes that Electrolux's warnings and safety information were reasonable and adequate in content, location, and format and thus, were not defective. (Dr. Wood Warnings Report, p. 6).

The Magistrate Judge's R & R sets forth in detail Dr. Wood's qualifications including her extensive and impressive educational background, work history, including her employment with

---

[4] Electrolux has given notice that it does not intend to call Dr. Steffey at trial and has withdrawn him as a testifying witness. Thus, he is mentioned only with respect to the hand he had in co-authoring the written report which is the subject of the Motion in Limine filed by State Farm.

[5] The co-authored report, hereinafter "Dr. Wood's Report," is attached to Exhibit C to State Farm's memorandum in support of its motion and has been fully reviewed by the undersigned.

[6] The Drs. offered a third opinion which Electrolux has opted to withdraw.

4

Exponent as a Principal Scientist and Director of the Human Factors Practice,[7] and her experience in researching the impact of safety and health related information on human behavior and injury reductions. In addition, the Magistrate Judge noted that she has an extensive background in risk analysis and outlined that background in his R & R. And, while the Magistrate Judge did find Dr. Wood could "certainly have more qualifications to opine in the area of statistics," (R & R, pp. 9-10), he did not disqualify her on this basis since, "[t]he requirement that an expert be qualified by knowledge, skill, experience, education or training should not be viewed as being particularly rigorous." (R & R, p. 10, citing cases). In the parties' objections, neither side argues that Dr. Wood is not qualified by knowledge, skill, experience, education, or training to render the opinions she does; rather, they take issue with whether those opinions are sufficiently reliable for a jury to hear. Given the absence of objection to her qualifications, the Court hereby ADOPTS the portions of the Magistrate Judge's R & R related to Dr. Wood's qualification and concludes that she is qualified to render her opinions in this case. See *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir.1999). (noting that if no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error); *O'Keefe v. Gist,* 2012 WL 3561782, 8 (C.D.Ill.,2012) ("*De novo* review of a magistrate judge's recommendation is required only for those portions of the recommendation for which particularized objections, accompanied by legal authority and argument in support of the objections, are made." quoting *United States ex rel. McCall v. O'Grady,* 1995 WL 584333, at *1 (N.D.Ill.1995)).

Her qualifications aside, the Magistrate Judge examined in great detail whether Dr. Wood's

---

[7]"Human Factors is a discipline that incorporates a study of human behaviors, limitations and capabilities into the design of products, systems, and equipment." (Magistrate Judge's R & R relating to State Farm expert Ronald Parsons, DE 120, p. 12 fn. 4 quoting *Winters v. Fru-Con, Inc.,* 498 F.3d 734, 741 (7th Cir. 2007).

two statistical opinions are based upon a reliable methodology. Ultimately, he concluded that her statistical opinions, that is the two opinions in the Dr. Wood Report, should be excluded as unreliable for three reasons. First, the Magistrate Judge determined that in conducting her statistical analysis, Dr. Wood used data obtained from two different sources when she could have and should have used data from comparable sources. He noted, for instance, that Dr. Wood obtained the number of fires involving all manufacturers' dryers from the National Fire Protection Association ("NFPA"),[8] but received the number of fires involving Electrolux dryers from Electrolux itself.[9] This, he concluded, created an unreliable data set from which Dr. Wood performed her calculations and reached her conclusions. Second, the Magistrate Judge focused on the fact that Dr. Wood did not independently verify the information she received from Electrolux before she used it in her calculations, thereby further suggesting its unreliability. (R & R, pp. 13-14). Finally, the Magistrate Judge concluded even if the data Dr. Wood used was reliable, the opinions do not assist the trier of fact because the statistical opinions do not fit the facts of the case. In reaching this conclusion the Magistrate Judge explained that Dr. Wood's comparison is not limited to dryer fires caused by lint accumulation, which is the liability theory in this case:

> State Farm alleges that the Slabachs' Electrolux gas dryer was defectively designed and that these defects caused lint to accumulate in areas not visible to the user and subsequently ignite. Dr. Wood's report does not address this claim, 'but instead compares all Electrolux dryer (regardless of model or type) with all other dryers in the United States (again, regardless of model or type) regarding the frequency of dryer fires.'

(R & R, p. 17 quoting *State Farm Fire & Cas. Co. v. Electrolux*, No. 2:10-CV-01147 RSM, 2012

---

[8] The NFPA derives its estimates from the National Fire Reporting System ("NFIRS").

[9] Electrolux derives its estimates from the number of fires reported by consumers, retailers, insurance carriers, and other sources of fire incidents "in which it is claimed that the fire involved an Electrolux clothes dryer." (R & R, p. 14).

6

WL 161821, at *3 (W.D. Wash. Jan. 4, 2012).

With respect to the opinions expressed in Dr. Wood's Warnings Report, the Magistrate Judge concluded that those opinions were both reliable and admissible. In doing so, he pointed out that Dr. Wood reviewed the warnings, owner's guide, and instructions associated with the Slabachs' dryer and went on to analyze the various factors relevant to the adequacy of a warning prior to offering her opinions. Moreover, Dr. Wood, relied upon the American National Standard for Product Safety Signs and Labels and explained that the warnings met those standards. She further "noted that the safety information for the dryer utilized common formatting techniques that assist the reader in processing information, such as using headings, 'signal words,' and safety alert symbols." (R & R, p. 21 quoting the Dr. Wood Warnings Report, p. 3). Finally, the Magistrate Judge emphasized that Dr. Wood acknowledged the NFPA and the Consumer Product Safety Commission ("CPSC") have recognized the risk of lint accumulation within dryers and have made recommendations to consumers relating to lint build up and servicing of dryers. Using that knowlege, the Magistrate Judge noted that Dr. Wood's opinions address whether the warnings and safety information "'make apparent the potential harmful consequences' of lint accumulation" (R & R, p. 23). He further concluded that together with her conclusion that the warnings are adequate in content, location, and format, she properly opines as to "whether the warning appropriately conveys the nature of this risk to consumers so they can exercise necessary caution." (*Id.*).

Despite the detailed and thorough discussion by the Magistrate Judge, both sides have filed objections to the portions of his recommendations that hinders their cause. Electrolux challenges the Magistrate Judge's recommendation that Dr. Wood's statistical analysis be excluded as unreliable while State Farm challenges the recommendation that Dr. Wood's opinions as to the

7

adequacy of the warnings is permissible. It is to these specific objections that the Court now turns.

With respect to Electrolux's challenges to the R & R, it asserts that the Magistrate Judge misapplied the independent verification standard; erred in finding Dr. Wood's comparative analysis unreliable because she took data from two different sources; and erred in concluding that the statistical opinions were unreliable because they did not fit the facts of the case. (Objections, p. 2). It also asserts that the Magistrate Judge impermissibly intervened in areas reserved for the jury or other fact-finder. Having reviewed these objections as well as the record before the Magistrate Judge, his R & R and the briefs of the parties, the Court concludes they are not well-taken.

Electrolux argues that the Magistrate Judge unfairly required Dr. Wood to independently verify the data she received from Electrolux noting that there is nothing "illicit" in an expert analyzing data that was prepared for litigation by an interested party. *See Southwire Company v. J.P. Morgan Chase & Co.*, 528 F.Supp. 2d 908, 93 (E.D.Wis. 2007). However, the Magistrate Judge did not assert that the data was skewed or improperly provided to Dr. Wood at all; what the Magistrate Judge concluded is that without Dr. Wood independently verifying the facts provided to her by Electrolux, an interested party, her analysis suffered from a reliability flaw because she had not confirmed that her analysis was comparing apples to apples rather than apples to oranges. In fact, Dr. Wood's own testimony was that she accepted the reports she received from Electrolux and did nothing additional to research the sources of the information, how the data was compiled, or verify the reliability of the data. This problem, the Court concludes, as did the Magistrate Judge, renders Dr. Wood's opinion unreliable. *See* R & R, pp. 13-15 (citing authorities).[10]

---

[10]Electrolux asserts that if the Court conducted an evidentiary hearing as part of its *de novo* review, it could provide evidence that the information Dr. Wood received from Electrolux is not capable of the type of independent verification the Magistrate Judge believed was necessary to validate her opinions. However, the absence of independent verification was one of three reasons provided by the

And, even if the Magistrate Judge erred in that determination, Dr. Wood's statistical opinions suffer from two other flaws that Electrolux seeks to have this Court overlook. First, as the Magistrate Judge pointed out, in performing her comparative analysis Dr. Wood utilized data from two entirely different sources. Dr. Wood compared the number of fires involving all manufacturers' dryers against the number of fires reported directly to Electrolux to reach her conclusion that "[t]he risk of dryer-involved fires reported for Electrolux clothes dryers is statistically significantly lower than the risk of fires for all models of clothes dryers from any manufacturer." (Dr. Wood Report, p. 8). However, the number of dryer fires involving all manufacturers' dryers came from one source, an NFPA report while the number of dryer fires involving Electrolux fires came from another. Thus, her conclusion is based on data obtained from two different batches of data.

More importantly, however, the comparative analysis is irrelevant to the facts of this case. The underlying theory is that Electrolux dryers have a design defect in that they permit lint to accumulate in areas that combust thereby creating a higher rate of fires than other dryers manufactured in the United States. Thus, the relevant inquiry is whether Electrolux dryers have a higher rate of fires caused by lint collection in high combustion areas than other manufacturers' dryers. The data analyzed by Dr. Wood is not limited to this particular design problem. She does not analyze the data provided to her to assess the reported cause of the dryer fire; rather, she examines all types of dryer fires to all types of dryer fires reported to Electrolux. Thus, her analysis is not specific to the issue in this case. Instead, it is a general analysis of whether, on the whole, Electrolux dryers are comparatively safer than other brands. Accordingly, the Court agrees with the

---

Magistrate Judge in his R & R for excluding the opinion on reliability grounds. Thus, even if the Court entertained the evidence Electrolux believes it could supply, the Court would still find the opinions unreliable and adopt the Magistrate Judge's R & R for the two remaining reasons set out in the R & R.

Magistrate Judge's R & R, that the statistical opinions offered by Dr. Wood are unreliable and must be excluded. Electrolux's objections to the R & R are therefore, OVERRULED.

This leaves State Farm's objections to the portion of the R & R that recommends denying the motion in limine with respect to Dr. Wood's warning opinions. There is little to be said about the validity of State Farm's objection. State Farm asserts that Dr. Wood's opinion is flawed because her opinion speculates that *if* the Slabach's had complied with the warnings provided, there would have been no fire and thus, no injury. (State Farm Objection, p. 2). However, this is a mischaracterization of Dr. Wood's opinions. Dr. Wood specifically indicates in her report that "the fact that some users may not follow the safety information presented within an instruction or warning does not make the information 'defective.'" (Dr. Wood Warnings Report, p. 5). Paraphrasing slightly, Dr. Wood's opinion is simply that based upon her knowledge and research, the warning information she reviewed for Electrolux dryers is adequate in factual content, location, and format to warn the users of safety risks associated with the use of the product. The Court has reviewed this report and has found no opinion by Dr. Wood that indicates had the Slabach's followed the warnings, no fire would have occurred.

That said, State Farm points to particular portions of her warning opinions such as Dr. Wood's opinion that Electrolux's 18 month cleaning warning (in essence, a warning that a qualified service person should inspect and clean the dryer at 18 month intervals) is adequate and claims it is speculative/inaccurate since she has no knowledge as to why the time period specified in the warning exists or as to whether the 18 month interval is frequent enough to avoid fires. But again, State Farm mischaracterizes the record. Dr. Wood is not offering an opinion as to whether qualified service personnel would have been able to clean the Slabach's dryer thereby preventing the fire that

caused the injury. Rather, she is simply opining that the warning was sufficient to notify the consumer that they should call someone to clean the dryer, i.e. whether the factual content of the warning conveyed a message to the consumer.

More importantly, however, State Farm's issues with Dr. Wood's warnings opinions are an issue for cross-examination at trial, not a reason to exclude her warnings opinions as a whole. Indeed, "[a] *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.* 689 F.3d 802, 805 (7th Cir., 2012) If, as it does in this case, the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Accordingly, the Court OVERRULES State Farm's Objections to the Magistrate Judge's R & R.

## **CONCLUSION**

Based on the foregoing, the Court the Court will OVERRULE Electrolux's objections to the R& R [DE 123]; OVERRULE State Farm's objections to the R&R [DE124]; ADOPT the R & R in its entirety [DE 121][11]; and DENY, in part, and GRANT, in part, State Farm's Motion to Exclude the Testimony of Dr. Christine Wood. [DE 92].

Entered: This 17th day of June, 2013

                    s/ William C. Lee

---

[11]The court notes that in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of trial. *See Ohler v. United States,* 529 U.S. 753, 758 fn. 3 (2000). Thus, the issue of the admissibility of Dr. Wood's testimony may be revisited at trial or in a final pretrial conference if the presiding trial judge is so inclined.